UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ADAM HILL, 99-A-6279,                 :

                  Petitioner,         :

    -against-                         :    02 Civ. 7637 (RCC)(HBP)

W.E. PHILIP, Acting                   :    REPORT AND
Superintendent, N.Y.S. DEPARTMENT          RECOMMENDATION
OF CORRECTIONAL SERVICES,             :

                  Respondent.         :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RICHARD C. CASEY, United States

District Judge,


I.  Introduction


          Petitioner Adam Hill seeks, by his pro se petition for

a writ of habeas corpus pursuant to 28 U.S.C. Section 2254, an

Order vacating a judgment of conviction entered on September 13,

1999, after a jury trial, by the Supreme Court of the State of

New York, Bronx County (Marcus, J.), for one count of burglary in

the second degree and one count of assault in the second degree,

in violation of New York Penal Law Sections 140.25 and 120.05,

respectively.  By that judgment, petitioner was sentenced as a

persistent violent felony offender to two concurrent,  indetermi-

nate terms of imprisonment of twenty-five years to life on the

burglary count and twenty years to life on the assault count. Petitioner is currently incarcerated pursuant to that judgment.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II.  Facts[1]

A.  Facts Leading to
    Petitioner's Conviction

Petitioner's conviction arises from an assault committed on Paul McKinley in his apartment in the Bronx during the early morning hours of April 16, 1997.

The prosecution offered evidence at trial that showed during the early morning hours of April 16, 1997, McKinley was asleep in his apartment with his wife and three children. McKinley was awoken by someone ringing his door bell and banging at his apartment's door.  McKinley got out of bed, went to his front door and saw petitioner and another individual inside his apartment.  The second individual walked past McKinley, toward

---

[1]No trial transcript has been provided.  Accordingly, the facts set forth herein are based on the statements of facts set forth in petitioner's and the prosecution's briefs to the Appellate Division of the Supreme Court which are annexed as Exhibits 1 and 2 to the affidavit of Assistant District Attorney Lara R. Biminow, sworn to October 9, 2003 ("Biminow Aff."). Where the briefs are in conflict, I have relied on the version of events set forth in petitioner's brief.  Since the version of the facts in petitioner's brief is, presumably, the view of the evidence and the proceedings most favorable to petitioner, petitioner is not prejudiced by my reliance on the briefs.

his children's room, while petitioner asked McKinley how his case was going.  Prior to April 1997, petitioner and McKinley had been arrested for selling narcotics together.

At that point, one of McKinley's neighbors -- Jerry Villega -- who was also awoken by the banging at McKinley's door, walked down the hallway to McKinley's apartment to investigate the commotion.  Seeing that the door to McKinley's apartment was ajar, Villega asked McKinley if everything was alright.  McKinley testified that because petitioner had told him to get rid of Villega, he told Villega that he was okay.

The second individual then walked towards McKinley from the direction of his children's room.  McKinley asked him what he was doing but received no response.  At that point, petitioner grabbed McKinley in a choke hold until he lost consciousness. When McKinley regained his consciousness, he found himself laying in a pool of his own blood from multiple slashes to his neck which required a total of 70 stitches to close.  McKinley dragged himself to Villega's apartment, and Villega called for an ambulance.

Petitioner testified at trial and offered a substantially different version of events.  Petitioner testified that he and McKinley had known each other for approximately 20 months and had sold cocaine together from approximately February through August 1996.  Petitioner testified that he and McKinley were

supplied with cocaine by an individual identified as "Pete" on a consignment basis, and that they would pay Pete from the proceeds of their cocaine sales.

Petitioner testified that during the early morning hours of April 16, 1997, McKinley called him and invited him to come to his apartment to have some beers. Petitioner agreed and arrived at McKinley's apartment at approximately 2:15 a.m.

Petitioner testified that when he arrived at McKinley's apartment, Pete and a third individual were present in addition to McKinley. Pete demanded money for an April 1996 cocaine delivery, claiming that McKinley had admitted to him that McKinley and petitioner had lied when they had previously told him that the April 1996 delivery had been seized by the police and that the purpose of the lie was to avoid paying for the delivery. Petitioner denied Pete's allegation, but Pete persisted in his demand for payment.

Petitioner testified that after arguing with Pete for about ten minutes, he told Pete that a taxi was waiting for him downstairs and that he had to pay the driver. Petitioner stated that he then left McKinley's apartment and returned home.

B.  The <u>Ventimiglia</u> Hearing
    and Related Proceedings

        Prior to trial, petitioner sought and was granted a

<u>Ventimiglia</u> hearing[2] to preclude the prosecutor from offering

evidence that petitioner and McKinley had been accused of selling

narcotics together and had narcotics charges pending against them

(Petitioner's Brief to the Appellate Division, dated March 2001

and annexed as Exhibit 2 to the Binimow Aff. ("Pet. Brf."), at

4).  Petitioner had failed to appear in connection with the

narcotics charges and a warrant had been issued for his arrest

(Pet. Brf. at 4).  The prosecutor sought to argue that peti-

tioner's history of narcotics trafficking with McKinley provided

a motive for the assault, namely that petitioner feared that

McKinley would cooperate and testify against petitioner in the

narcotics case (Pet. Brf. at 4).  The prosecutor also sought to

argue that the history of narcotics trafficking established

petitioner's identity as the assailant (Pet. Brf. at 4).

        Petitioner summarized the Trial Court's ruling at the

<u>Ventimiglia</u> hearing as follows:

            The court ruled that it would limit [McKinley's]
            testimony to [petitioner and McKinley] being in an
            undefined business together and to permitting appel-
            lant's question [to McKinley] regarding the case,

_____

        [2]<u>People v. Ventimiglia</u>, 52 N.Y.2d 350, 420 N.E.2d 59, 438
N.Y.S.2d 261 (1981).  A <u>Ventimiglia</u> hearing is a pre-trial
hearing conducted to determine the admissibility of evidence
concerning uncharged criminal conduct.

without further explanation, into evidence (31-32).
The court noted, "Well, look, I can tell you how we're
going to start out.  I can't tell you how we're going
to finish because frankly I can see all kinds of ways
in which this door could be easily opened.  We'll just
have to see how it goes" (32).  The court warned the
defense, "[T]his is a shield and not a sword for you.
If you use it as a sword it's going to open the door to
all this coming out . . . ." (32).  The court later
again warned the defense that the door could easily
open to additional evidence of the prior arrest and the
drug business coming into evidence (35).

(Pet. Brf. at 5).  Although McKinley did testify that he knew

petitioner and he and petitioner had been in an unspecified

business together, he did not mention the fact that he and

petitioner had sold narcotics together or that they were facing

narcotics charges.

As noted above, petitioner testified in his own de-

fense.  Petitioner testified that he and McKinley had been in the

drug business together (Pet. Brf. at 9).  The prosecutor sought

an immediate sidebar conference at which he claimed that he had

been "sandbagg[ed]" and that defense counsel's tactics made it

appear as if the prosecution had been withholding evidence from

the jury (Pet. Brf. at 9).

Defense counsel claimed that petitioner's testimony was

the result of a decision petitioner had made after hearing

McKinley's testimony and that defense counsel "understood that,

based upon the court' ruling at the <u>Ventimiglia</u> hearing, that the

defense could properly open the door to information about [peti-

tioner's] drug selling if the defense chose to do so (502-03)"

6

(Pet. Brf. at 9).  Defense counsel further stated that he had no intention of suggesting to the jury that the prosecution had withheld evidence from it (Pet. Brf. at 9).

The prosecution requested that the Trial Court give a curative instruction (Prosecution's Brief to the Appellate Division, dated April 2001 and annexed as Exhibit 1 to the Binimow Aff. ("Pros. Brf."), at 15).  Defense counsel objected to any instruction being given, and argued that if an instruction was given, it should be neutral (Pet. Brf. at 9-10; Pros. Brf. at 15-16).  The Trial Court rejected defense counsel's suggestion, stating that it was "appropriate that the people be exonerated from any suggestion that they were involved in withholding this information and that the application came from [the defense]" (Pet. Brf. at 10).  The Trial Court then instructed the jury as follows:

> All right, ladies and gentlemen, I just want to explain one thing to you before we proceed any further.
>
> You heard testimony during Mr. McKinley's testimony on the stand that Mr. McKinley and the defendant were in business together.
>
> Mr. McKinley didn't indicate what the nature of the business was and I want to explain to you that the reason that he did was because of an order that I gave that he not do so based on an application by the defense.  That's the reason you didn't hear it from him.

(Pet. Brf. at 10; Pros. Brf. at 16).

Shortly thereafter, when petitioner began to discuss the fact that he and McKinley had been arrested on narcotics

charges, the Trial Court again gave the jury a curative instruc-

tion:

> "All right, ladies and gentlemen, again in connection
> with the testimony you just heard, I remind you that
> you heard testimony from Mr. McKinley that Mr. McKinley
> had a case.  I want you to know again that it was by my
> order that Mr. McKinley did not give any testimony
> concerning whether the case involved anyone else.  That
> was on the defendant's application for proper legal
> reasons and I granted the motion and that's why you
> didn't hear that testimony from Mr. McKinley."

(Pet. Brf. at 10; Pros. Brf. at 17).

In his summation, the prosecutor also addressed McKin-

ley's omission of his criminal history with petitioner:

> What do we have here?  You have a victim of a crime.  A
> man who told you that he was in the drug business.  I
> take that back because of defendant's objection.  He
> did not tell you that he was in the drug business.  In
> business with the defendant. . . .  The People have
> proved beyond a reasonable doubt one that in May these
> two people were in business together.  We have proved;
> two, well, we have proved that the witness, Mr. McKin-
> ley was arrested.  The defense who objected to it
> originally, but put in later they were arrested to-
> gether. . . .  What is the first question out of the
> defense lawyer's mouth when defendant takes the stand:
> What business were you in?  I couldn't ask him that,
> okay, what frightens me now, what makes me afraid is
> that you're not going to listen to what the Judge told
> you.  You could have that read back. . . .  The Judge
> told you under the defendant's motion I couldn't ask
> Mr. McKinley what business they were in.  What makes
> that even worse, when I asked Mr. McKinley:  Were you
> arrested on May 7th, do you remember that?  It was
> because of the defendant's motion and the Judge's
> ruling [I was] not allowed to ask Mr. McKinley who he
> was arrested with.  Legal ruling by the Judge followed
> by Mr. McKinley followed by me. . . .  What frightens
> me again is that you are going to think that Mr. McKin-
> ley or I hid something. . . .  You heard the Judge's
> instructions.  It's not true.  The Judge made a ruling.
> I obeyed the ruling.  It all changed w[hen] the defen-

dant took the stand, the first two questions out of his
mouth, and I suggest to you that's where we are going
in this case.  Try to keep your eye on the ball here. .
. .

(Pet Brf. at 22-23; Pros. Brf. at 27).

During its deliberations, the jury sent out a note,
stating:  "We, the jury want to know, one, if McKinley was not
able to mention Pete based on an application filed by the de-
fense" (Pet. Brf. at 14).  The Trial Court responded "the answer
to that is no" (Pet. Brf. at 14).

The jury subsequently acquitted petitioner of the
charges of attempted murder in the second degree, burglary in the
first degree and assault in the first degree, but found him
guilty of the offenses of burglary in the second degree and
assault in the second first degree (Pet. Brf. at 14).

C.  Petitioner's Direct
    Appeal and His Claims Here

Petitioner, assisted by counsel, appealed his convic-
tion to the Appellate Division of the Supreme Court, First
Department.  Petitioner asserted two claims in the Appellate
Division:  (1) that the Trial Court's cautionary instructions
were improper because they suggested to the jury that key evi-
dence had been kept from it by the defense, and (2) that the
sentence of twenty-five years to life was excessive in light of

the fact that petitioner had been acquitted of the most serious charges filed against him.

The Appellate Division affirmed petitioner's conviction on June 14, 2001, stating:

> Under the unusual circumstances presented, the court properly exercised its discretion in delivering curative instructions advising the jury that certain evidence had originally been precluded at defendant's request. After making a pretrial ruling that the drug-trafficking relationship between defendant and the victim and their status as codefendants in a pending drug case would be precluded, the court expressly warned the defense not to use this ruling as a proverbial sword rather than a shield. However, defendant did precisely that. By revealing these facts during his direct testimony, defendant made it appear that the People were hiding them. Accordingly, the court's instructions were appropriate to undo the damage caused to the People's case (cf., People v Fardan, 82 NY2d 638). Furthermore, there was nothing in the curative instructions that could be viewed as disparaging defendant or defense counsel (compare, People v Henderson, 169 AD2d 647). Defendant's remaining arguments on this subject are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them.

> We perceive no basis for reduction of sentence.

People v. Hill, 284 A.D.2d 193, 193-94, 726 N.Y.S.2d 103, 104 (1st Dep't 2001).

Petitioner subsequently sought leave to appeal to the New York Court of Appeals asserting the same claims he asserted before the Appellate Division. The New York Court of Appeals denied petitioner leave to appeal on August 16, 2001 without opinion. People v. Hill, 96 N.Y.2d 919, 758 N.E.2d 662, 732 N.Y.S.2d 636 (2001).

Petitioner asserts the same claims here that he asserted on direct appeal.[3]

III.  Analysis

    A.  Standard of Review

Where the state court has addressed a habeas petitioner's claims on the merits, a habeas petitioner must meet a stringent standard before a federal court can issue the writ. Specifically, 28 U.S.C. § 2254(d) provides that in such a situation, habeas relief may be granted only when the Trial Court's decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]Petitioner characterizes the claims he assets here as three separate claims, namely:  (1) "Over objection, the court improperly instructed the jurors that suppression rulings were based on applications by the defense;" (2) "excessive sentence" and (3)"the court was not impartial in its instructions" (Petition, ¶ 12(A)-(C)).  Petitioner's third claim arises out of his contention that "When the Court explained to the jury 'why they didn't hear the complainant [sic] witness mention certain facts,' his explanation made it appear as if the prosecution was being honest and the defense was not" (Petition, ¶ 12(C)).  Since petitioner's third claim is identical to his first claim, I shall consider it on the merits.  Since the claim fails on the merits, there is no prejudice to respondent.

The Supreme Court has explained the alternative standards contained in the former paragraph as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). See also <u>Early v. Packer</u>, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (<u>per curiam</u>). . . .
>
> Second, respondent can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law. As we have explained:
>
>> "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See <u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); <u>Williams</u>, <u>supra</u>, at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."
>
> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (<u>per curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Brown v. Payton</u>, 125 S.Ct. 1432, 1438 (2005); <u>see</u> <u>also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-72 (2003); <u>Brown v. Artuz</u>, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends

12

a legal rule established by the Supreme Court or if it unreason-ably fails to extend a legal rule to a context in which the rule reasonably should apply." <u>Serrano v. Fischer</u>, 412 F.3d 292, 296-97 (2d Cir. 2005), <u>petition</u> <u>for</u> <u>cert</u>. <u>filed</u>, No. 05-7930 (Aug. 17, 2005).

"Unreasonableness is determined by an 'objective' standard." <u>Gersten v. Senkowski</u>, 426 F.3d 588, 607 (2d Cir. 2005), <u>quoting</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 409 (2000). In order for a state court's application of Supreme Court precedent to be unreasonable, "[s]ome increment of incorrectness beyond error" is required. <u>Henry v. Poole</u>, 409 F.3d 48, 68 (2d Cir. 2005) (internal quotation marks omitted); <u>accord</u> <u>Brown v. Artuz</u>, <u>supra</u>, 283 F.3d at 500-01; <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). However, "the increment need not be great; otherwise habeas relief would be limited to state court decision 'so far off the mark as to suggest judicial incompetence.'" <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000), <u>quoting</u> <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 889 (3d Cir. 1999) (<u>en banc</u>); <u>accord</u> <u>Gersten v. Senkowski</u>, <u>supra</u>, 426 F.3d at 607. Finally, the nature of the rule in issue also impacts the assess-ment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which "must emerge in application over the course of time." [<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)]. "The more general the rule, the more leeway courts have

13

in reaching outcomes in case by case determinations."
<u>Id</u>.

<u>Serrano v. Fischer</u>, <u>supra</u>, 412 F.3d at 297.

Both the "contrary to" and "unreasonable application"
clauses "restrict[] the source of clearly established law to [the
Supreme] Court's jurisprudence." <u>Williams v. Taylor</u>, <u>supra</u>, 529
U.S. at 412. "That federal law, as defined by the Supreme Court,
may either be a generalized standard enunciated in the [Supreme]
Court's case law or a bright-line rule designed to effectuate
such a standard in a particular context." <u>Kennaugh v. Miller</u>,
289 F.3d 36, 42 (2d Cir. 2002). "A petitioner cannot win habeas
relief solely by demonstrating that the state court unreasonably
applied Second Circuit precedent." <u>Yung v. Walker</u>, 341 F.3d 104,
109 (2d Cir. 2003); <u>accord</u> <u>DelValle v. Armstrong</u>, 306 F.3d 1197,
1200 (2d Cir. 2002).

In order to be entitled to the deferential standard of
review, the state courts must have resolved a petitioner's claims
"on the merits." <u>Cotto v. Herbert</u>, 331 F.3d 217, 230 (2d Cir.
2003). "A state court adjudicates a claim 'on the merits' for
purposes of § 2254(d) when it '(1) disposes of the claim on the
merits, and (2) reduces its disposition to judgment . . . . even
if the state court does not explicitly refer to either the
federal claim or to relevant federal case law.'" <u>Serrano v.
Fischer</u>, <u>supra</u>, 412 F.3d at 296, <u>quoting</u> <u>Gutierrez v. McGinnis</u>,
389 F.3d 300, 304 (2d Cir. 2004). A state court's summary

14

statement that a claim is "without merit," without further explanation, constitutes an adjudication on the merits for purposes of § 2254(d). <u>Serrano v. Fischer</u>, <u>supra</u>, 412 F.3d at 296; <u>see</u> <u>Howard v. Walker</u>, 406 F.3d 114, 122 (2d Cir. 2005).

When the state court has not resolved a habeas petitioner's claim on the merits, the state court's decision is subject to <u>de novo</u> review. <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 230; <u>Diaz v. Herbert</u>, 317 F. Supp.2d 462, 470 (S.D.N.Y. 2004).

In this case there can be no question that the Appellate Division addressed petitioner's claims that the cautionary instruction was erroneous and that the sentence was excessive on the merits. As noted above, the Appellate Division rejected both of petitioner's claims, stating:

> Under the unusual circumstances presented, the court properly exercised its discretion in delivering curative instructions advising the jury that certain evidence had originally been precluded at defendant's request. After making a pretrial ruling that the drug-trafficking relationship between defendant and the victim and their status as codefendants in a pending drug case would be precluded, the court expressly warned the defense not to use this ruling as a proverbial sword rather than a shield. However, defendant did precisely that. By revealing these facts during his direct testimony, defendant made it appear that the People were hiding them. Accordingly, the court's instructions were appropriate to undo the damage caused to the People's case (<u>cf</u>., <u>People v Fardan</u>, 82 NY2d 638). Furthermore, there was nothing in the curative instructions that could be viewed as disparaging defendant or defense counsel (<u>compare</u>, <u>People v Henderson</u>, 169 AD2d 647). Defendant's remaining arguments on this subject are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them.

We perceive no basis for reduction of sentence.

People v. Hill, supra, 284 A.D.2d at 193-94, 726 N.Y.S.2d at 104.

Except for the last two sentences of the first paragraph, the

foregoing language clearly demonstrates that the Appellate

Division addressed the substance of petitioner's claims and does

not even suggest that procedural deficiencies played any role in

the court's decision.

The last two sentences of the first paragraph of the

Appellate Division's decision also demonstrate that it reviewed

even the unpreserved claims on the merits.  In its brief to the

Appellate Division, the prosecution argued that (1) petitioner

did not make any contemporaneous objection to the Trial Court's

second cautionary instruction and that any objection to that

charge was, therefore, unpreserved, and (2) that petitioner's

constitutional objection to either cautionary instruction was

unpreserved because the constitutional nature of the objection

was never asserted before the Trial Court (Pros. Brf. at 17-18).

Although the penultimate sentence of the first paragraph of the

Appellate Division's decision appears to endorse this procedural

argument, the Appellate Division's alternative holding, that the

claims lack merit, constitutes a decision on the merits for

purposes of Section 2254(d).  Zarvela v. Artuz, 364 F.3d 415, 417

(2d Cir. 2004), cert. denied, 125 S.Ct. 140 (2004) ("The Appel-

late Division found petitioner's claim to be unpreserved, and, in

16

any event, without merit, and therefore reviewed the claim on the merits."); Hines v. Elmira Corr. Fac., 02 Civ. 1057 (AKH), 2003 WL 21729836 at *4 (S.D.N.Y. July 25, 2003).[4]

In light of the language used by the Appellate Division, I conclude that the state court did resolve petitioner's claims on the merits and that the decision of the state court is, therefore, entitled to the deferential standard of review set forth in Section 2254(d).

B.  The Trial Court's
    Curative Instructions

Petitioner complains that the Trial Court's curative instructions gave the jury the impression that the prosecution was being honest with it while the defense was not and that they diverted the jury from the issues in the case to consideration of what evidence the defense was attempting to keep from it.

---

[4]Although the Appellate Division's apparent rejection of petitioner's constitutional claims on the ground that they were unpreserved would, in the absence of cause and prejudice, support a finding here of a procedural bar notwithstanding its alternative holding that the claims lack merit, Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Rivera v. Moscicki, 03 Civ. 5810, 2005 WL 2347840 at *3 (S.D.N.Y. Sept. 22, 2005), respondent does not argue that any aspect of petitioner's claim concerning the Trial Court's cautionary instructions is procedurally barred. Since respondent does not assert any procedural bar, the defense is waived.  Gray v. Netherland, 518 U.S. 152, 165-66 (1996) (procedural bar is an affirmative defense that is waived if not asserted).

Neither the party's research nor my own has found any Supreme Court authority addressing petitioner's arguments concerning the curative instructions or addressing the more general issue of a trial court's advising a jury that a criminal defendant made certain pretrial suppression motions.  Since there is no Supreme Court precedent directly on point, the decisions of the state courts were not "contrary to . . . clearly established Federal law, as determined by the Supreme Court," and petitioner can prevail only if the state court's decisions constituted an "unreasonable application" of Supreme Court precedent.  D'Joy v. New York State Div. of Parole, 127 F. Supp.2d 433, 439 (S.D.N.Y. 2001) (Where "there is no Supreme Court case [presenting] materially indistinguishable facts," a habeas "petition must be denied unless the state court's determination is considered an 'unreasonable application' of Supreme Court precedent.").

Since the Supreme Court has not addressed the specific claim asserted by petitioner, I must be guided by the general principles the Supreme Court has provided with respect to challenges to jury instructions in criminal cases.  DelValle v. Armstrong, supra, 306 F.3d at 1200.  In order to warrant habeas corpus relief based on an erroneous jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Four-

teenth Amendment."  <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973);

<u>accord</u> <u>Davis v. Strack</u>, 270 F.3d 111, 123 (2d Cir. 2001); <u>Smalls</u>

<u>v. Batista</u>, 191 F.3d 272, 277 (2d Cir. 1999).  In addition,

> [t]he burden of demonstrating that an erroneous in-
> struction was so prejudicial that it will support a
> collateral attack on the constitutional validity of a
> state court's judgment is even greater than the showing
> required to establish plain error on direct appeal.
> The question in such a collateral proceeding is
> "whether the ailing instruction by itself so infected
> the entire trial that the resulting conviction violates
> due process" . . . .

<u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977); <u>accord</u> <u>DelValle v.</u>

<u>Armstrong</u>, <u>supra</u>, 306 F.3d at 1201; <u>Roy v. Coxon</u>, 907 F.2d 385,

391 (2d Cir. 1990); <u>Leecan v. Lopes</u>, 893 F.2d 1434, 1443 (2d Cir.

1990).

     With the foregoing principles in mind, I find that the

curative instructions here do not rise to the level of constitu-

tional error.  First, as the Appellate Division noted, the

instructions did not criticize or belittle either the defendant,

his counsel or the defense's theory.  To the contrary, the second

curative instruction, which appears to have been given shortly

after the first such instruction, expressly noted that the

defendant's application had been made "for proper legal reasons"

(Pet. Brf. at 10; Pros. Brf. at 17).  Thus, there was nothing

about the instructions that was critical of the defendant, his

counsel or their theory of the case.

If there was any vice at all in the instructions, it
was that they identified for the jury which side was the source
of a pretrial suppression motion.  Ordinarily, the fact that one
side or the other objects to a particular item of evidence is
irrelevant, and juries are routinely instructed to disregard the
fact that an attorney objects to evidence.  See generally 1 Hon.
Leonard B. Sand, John S. Siffert, Walter P. Loughlin, Steven A.
Reiss, Modern Federal Jury Instructions Inst. 2-8 (2005).
However, given the facts in this case, the Trial Court's identi-
fication of defense counsel as the source of the pretrial motion
was insignificant.  As noted above, the Trial Court's second
curative instruction expressly noted that the objection was made
"for proper legal reasons."  Thus, there was no reason for the
jury to draw a negative inference from the fact that defendant
had made a pretrial motion.

Second, some explanation for McKinley's omission of his
narcotics trafficking with petitioner was necessary to dispel the
appearance that either the prosecutor or McKinley had withheld
material facts from the jury.  McKinley's narcotics trafficking
history with petitioner was a significant fact.  It not only bore
on McKinley's credibility, see generally United States v. Ortiz,
553 F.2d 782, 784 (2d Cir. 1977), but was a fact that most jurors
would find relevant to understanding the relationship between
McKinley and petitioner.  Although McKinley omitted this fact

from his testimony for entirely appropriate reasons, those reasons were unknown to the jury. In the absence of an explanation from the Court, the jury would have been left with the inaccurate impression that either McKinley himself or the prosecutor had omitted McKinley's criminal history in an attempt to improve his credibility and appeal to the jury.

Finally, the jury's question concerning McKinley's omission of "Pete" from his testimony does not suggest that the instructions had some pernicious effect on the jury's deliberations or diverted it from the true issues in the case. Like all juries, the jury in petitioner's trial had to weigh the testimony of all the witnesses and to assess the significance of inconsistencies among the witnesses. Petitioner's mention of Pete as the drug supplier to petitioner and petitioner's testimony that Pete was in McKinley's apartment on the night of the assault was inconsistent with McKinley's omission of any reference to Pete. In an obvious effort to determine whether McKinley had omitted any mention of Pete on his own initiative or whether he had failed to mention Pete as a result of the Trial Court's Order, the jury sent out its note. The Trial Court's response -- that it had not prohibited McKinley from mentioning Pete -- if anything, favored petitioner because it established that McKinley had withheld a fact that damaged his own credibility on his own

initiative, thereby suggesting that McKinley -- the prosecution's witness -- had not been forthright with the jury.

Admittedly, it is impossible to determine with absolute certainty whether the curative instructions had any prejudicial impact on the jury. However, given the need for the curative instructions and the absence of any suggestion of misconduct by defendant or defense counsel, the mere "possibility [of prejudice] is too speculative to justify the conclusion that constitutional error was committed." Henderson v. Kibbe, supra, 431 U.S. at 157.

C.  Petitioner's Excessive
    Sentence Claim

Assuming without deciding that petitioner exhausted his claim that his sentence was excessive,[5] and reading petitioner's

_____

[5]It is fundamental that a state prisoner seeking to vacate his conviction on the ground that his federal constitutional rights were violated must first exhaust all available state remedies. 28 U.S.C. § 2254(b)(1); Baldwin v. Reese, 541 U.S. 27, 29 (2004); Picard v. Connor, 404 U.S. 270, 275 (1971); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000). In order to satisfy the exhaustion requirement, (1) "the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim," Anderson v. Harless, 459 U.S. 4, 6 (1982); Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002); Galarza v. Keane, 252 F.3d 630, 638 (2d Cir. 2001), and (2) "a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991); McKethan v. Mantello, 292 F.3d 119, 122 (2d Cir. 2002).

(continued...)

claim as asserting a violation of the Eighth Amendment's prohibi-
tion against cruel and unusual punishment, see Herrera v. Artuz,
171 F. Supp.2d 146, 151 n.2 (S.D.N.Y. 2001), petitioner's second
claim also fails because it is meritless.

A sentence may violate the Eighth Amendment when the
sentence is "grossly disproportionate" to the crime committed or
when the sentence imposed "shocks the collective conscience of
society." United States v. Gonzalez, 922 F.2d 1044, 1053 (2d
Cir. 1991); see also Lockyer v. Andrade, supra, 538 U.S. at 73;
Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); United States v.
Romano, 825 F.2d 725, 731 (2d Cir. 1987); Pressley v. Bennett,
235 F. Supp.2d 349, 368-69 (S.D.N.Y. 2003); Caldron v. Keane, 97
Civ. 2116 (RCC)(JCF), 2002 WL 1205745 at *14 (S.D.N.Y. Feb. 21,
2002) (Report & Recommendation), adopted, 2003 WL 22097504
(S.D.N.Y. Sept. 9, 2003); Sutton v. Herbert, 39 F. Supp.2d 335,
337 (S.D.N.Y. 1999); see generally Ewing v. California, 538 U.S.
11 (2003).

If petitioner is challenging the sentence imposed as an
abuse of the Trial Court's discretion, he has failed to state a

---

[5](...continued)
   Although petitioner raised his excessive sentence claim
before the Appellate Division, he never raised the issue as a
constitutional claim and it is, therefore, unexhausted.  Picard
v. Conner, 404 U.S. 270, 276-77 (1971).  However, although
petitioner has apparently not satisfied the exhaustion
requirements, I can still address the claim to deny it on the
merits.  See 28 U.S.C. § 2254(b)(2) (permitting federal courts to
deny unexhausted habeas claims on the merits).

cognizable constitutional claim.  A sentence within the range established by state law, as the sentence here clearly was,[6] is ordinarily not subject to an Eighth Amendment challenge.  <u>See</u> <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) (<u>per</u> <u>curiam</u>); <u>Diaz v. Herbert</u>, 317 F. Supp.2d 462, 479-80 (S.D.N.Y. 2004); <u>Brown v. Goord</u>, 02 Civ. 2122 (NRB), 2002 WL 31093611 at *5 (S.D.N.Y. Sept. 13, 2002); <u>Espinal v. Barkely</u>, 95 Civ. 1214 (HB), 1996 WL 673833 at *1 (S.D.N.Y. Nov. 20, 1996); <u>Rodriguez v. O'Keefe</u>, 96 Civ. 2094 (LLS), 1996 WL 428164 at *7 (S.D.N.Y. July 31, 1996), <u>aff'd</u> <u>without</u> <u>opinion</u>, 122 F.3d 1057 (2d Cir. 1997).

If petitioner is claiming that his sentence is so disproportionately long that it constitutes an Eighth Amendment violation, his claim fails.  As stated by the Supreme Court, a habeas court will find that a state-law sentence is "grossly disproportionate" and violates the Eighth Amendment only "in the 'exceedingly rare' and 'extreme' case."  <u>Lockyer v. Andrade</u>, <u>supra</u>, 538 U.S. at 73, <u>quoting</u> <u>Harmelin v. Michigan</u>, <u>supra</u>, 501 U.S. at 1001.  <u>Accord</u> <u>Ewing v. California</u>, <u>supra</u>, 538 U.S. at 21; <u>Whitlatch v. Senkowski</u>, 344 F. Supp.2d 898, 905-07 (W.D.N.Y.

_____

[6]New York classifies burglary in the second degree and assault in the second degree and Class C and D felonies, respectively.  N.Y. Penal L. §§ 140.25, 120.05.  Where, as here, an individual is adjudicated a persistent violent felony offender, the permissible sentencing range, at the time of petitioner's sentencing, was an indeterminate sentence with a minimum term of 16 to 25 years and a mandatory maximum term of life.  N.Y. Penal L. § 70.08 (2), (3).

2004); <u>Vasquez v. Walker</u>, 01 Civ. 8032 (AKH), 2004 WL 594646 at
*5 (S.D.N.Y. Mar. 25, 2004); <u>Ayala v. People</u>, 03 Civ. 2762 (AKH),
2004 WL 527035 at *5 (S.D.N.Y. Mar. 16, 2004); <u>Williams v.
Philips</u>, 02 Civ. 5811 (DC), 2003 WL 21961127 at *8 (S.D.N.Y. Aug.
18, 2003).

      Petitioner's sentence here is entirely ordinary.  Other
courts have reviewed sentences of the range imposed upon peti-
tioner for comparable or lesser offenses and have uniformly
upheld such sentences as not violating the Eighth Amendment.
<u>E.g.</u>, <u>Cunningham v. Henderson</u>, 725 F.2d 32, 36-37 (2d Cir. 1984)
(counsel not ineffective for failing to assert an Eighth Amend-
ment violation concerning sentence of 15 years to life imposed on
persistent violent felony offender for theft of one dollar from
undercover officer); <u>Bryant v. Fischer</u>, 05 Civ. 0437 (PKC)(AJP),
2005 WL 3418282 at *25 (S.D.N.Y. Dec. 14, 2005) (Report &
Receommendation) (sentence of 15 years to life imposed on persis-
tent violent felony offender for assault in the second degree
does not violate Eighth Amendment); <u>Bruno v. Cunningham</u>, 03 Civ.
937 (MBM), 2004 WL 2290503 at *13 (S.D.N.Y. Oct. 8, 2004) (sen-
tence of 10 to 20 years for one count of assault in the second
degree not excessive); <u>Allaway v. McGinnis</u>, 301 F. Supp.2d 297,
301 (S.D.N.Y. 2004) (sentence of 25 years to life imposed on
persistent violent felony offender for assault on the second
degree does not violate Eighth Amendment); <u>Marsh v. Duncan</u>, 01 CV

1314 (JG), 2004 WL 86412 at *9 (E.D.N.Y. Jan. 7, 2004) (sentence
of 20 years to life imposed on persistent violent felony offender
for burglary in the second degree does not violate Eighth Amend-
ment); Rosa v. Herbert, 277 F. Supp.2d 342, 346 (S.D.N.Y. 2003)
(sentence of 25 years to life imposed on persistent violent
felony offender for two counts of attempted assault in the first
degree and one count of criminal possession of a weapon in the
second degree does not violate Eighth Amendment). See generally
Ewing v. California, supra, 538 U.S. 11 (sentence of 25 years to
life imposed on recidivist for stealing three golf clubs not
cruel and unusual); Lockyer v. Andrade, supra, 538 U.S. 77
(sentence of 25 years to life for stealing $150-worth of video-
tapes not cruel and unusual). In light of these decisions,
petitioner's sentence cannot be characterized as "grossly dispro-
portionate" to the crimes for which he was convicted. Petitioner
has not shown that the state court's sentence determination was
contrary to federal law or an unreasonable application of the
facts. See 28 U.S.C. § 2254(d)(1)-(2).

IV. Conclusion

        Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied in all respects.

        In addition, since petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also

recommend that a certificate of appealability not be issued. 28
U.S.C. § 2253. To warrant the issuance of certificate of appeal-
ability, "petitioner must show that reasonable jurists could
debate whether . . . the petition should have been resolved in a
different manner or that the issues presented were adequate to
deserve encouragement to proceed further." Middleton v. Attor-
neys General of States of N.Y. & Pennsylvania, 396 F.3d 207, 209
(2d Cir. 2005) (per curiam)(quotation marks omitted); see also
Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).
For the reasons set forth above, I conclude that there would be
no difference of opinion among reasonable jurists that peti-
tioner's federal rights were not violated.

        I further recommend that certification pursuant to 28
U.S.C. § 1915(a)(3) not be issued because any appeal from this
Report and Recommendation, or any Order entered thereon, would
not be taken in good faith. See Coppedge v. United States, 369
U.S. 438 (1962).

V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have ten
(10) days from the date of this Report and Recommendation to file
written objections. See also Fed.R.Civ.P. 6(a) and 6(e). Such
objections (and responses thereto) shall be filed with the Clerk

of the Court, with courtesy copies delivered to the chambers of the Honorable Richard C. Casey, United States District Judge, 500 Pearl Street, Room 1350, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Casey. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        January 5, 2006

                              Respectfully submitted,

                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Adam Hill
DIN NO. 99-A-6279
Green Haven Correctional Facility
Stormville, New York  12582

Lara R. Binimow
Assistant District Attorney
Bronx County
198 East 161 Street
Bronx, New York  10451